UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THE BUCK GROUP, LLC,

                          **Plaintiff,**

  vs.                                                    6:24-CV-70
                                                             (MAD/ML)

COUNTY OF ONEIDA, JASON SWISTAK, and
KAREN SZEWCZYK,

                          **Defendants.**
_____

**APPEARANCES:**                                         **OF COUNSEL:**

**PHILLIPS LYTLE LLP**                                   **CRAIG R. BUCKI, ESQ.**
125 Main Street
One Canalside
Buffalo, New York 14203
Attorneys for Plaintiff

**KENNEY SHELTON LIPTAK NOWAK, LLP**                     **DAVID H. WALSH, IV, ESQ.**
4615 North Street                                        **DANIEL CARTWRIGHT, ESQ.**
Jamesville, New York 13078
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff commenced this action on January 16, 2024, alleging a claim under the Takings Clause of the Fifth Amendment to the United States Constitution, as well as state-law claims for conversion, and a violation of New York Highway Law § 136. *See* Dkt. No. 1. Currently before the Court is Defendants' motion to dismiss brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 17.

### II. BACKGROUND

Plaintiff is a limited liability company organized under the laws of the State of New York. *See* Dkt. No. 1 at ¶ 1. It maintains its principal place of business at 105 Main Street, Whitesboro, New York 13492. *See id.* Defendant Oneida County (the "County") is a municipal corporation located in New York State. *See id.* at ¶ 2. Defendants Jason Swistak and Karen Szewczyk are individuals who reside in New York State and are employed by the Oneida County Department of Public Works. *See id.* at ¶¶ 3-4.

According to the complaint, this lawsuit arises from the County's intentional destruction of certain landscaping and pipe-installation work performed by Plaintiff at 2 Ironwood Road in the Town of New Hartford (the "Property"), which is located in the County. *See id.* at ¶ 9. The Property includes a ditch that runs along Valley View Road near Ironwood Road. *See id.* at ¶ 10. The Property's owner desired to fill the ditch, and engaged Plaintiff to perform the work. *See id.* at ¶ 11.

In accordance with New York Highway Law § 136, Plaintiff applied for a permit from the County on July 17, 2023. *See id.* at ¶ 12. On July 26, 2023, while acting in her official capacity as an employee of the County's Department of Public Works, Defendant Szewczyk notified Plaintiff in writing that the permit was "ready." *Id.* at ¶ 13. Defendant Szewczyk also notified Plaintiff to provide insurance document, plus a permit fee payment of $220.00. *See id.* Plaintiff provided the requested insurance documents later that same day and the permit fee was remitted to the County by check dated August 8, 2023. *See id.* at ¶¶ 14, 18.

On July 27, 2023, representatives of Plaintiff filled the ditch at the Property and installed storm-drainage piping. *See* Dkt. No. 1 at ¶ 15. Defendant Swistak, in his official capacity as an engineer employed by the County, observed this work in person. *See id.* While observing Plaintiff's work at the Property on July 27, 2023, Defendant Swistak requested certain alterations

to the work, and Plaintiff complied with each such request. *See id.* at ¶ 16. At no point did Defendant Swistak ask anyone to stop the work. *See id.* at ¶ 17. In fact, he expressly told Plaintiff's representatives that they did not need to stop the work. *See id.*

On or about September 14, 2023, a "Notice of Violation" letter signed by Defendant Swistak was mailed to Plaintiff. *See id.* at ¶ 19; *see also* Dkt. No. 1-1. The Notice of Violation was sent to Plaintiff "approximately 49 days after Defendant Swistak personally observed completion of the landscaping and pipe-installation work at the Property; made no objection to the same; and in fact told [Plaintiff] that this work should continue toward completion." Dkt. No. 1 at ¶ 20. The Notice of Violation stated that the permit was "NOT issued" even though Plaintiff claims that Defendant Szewczyk, acting on the County's behalf, told Plaintiff in writing that the permit was "ready" on July 26, 2023, the day before work began at the Property. *See id.* at ¶ 21. Defendant Swistak's letter further stated that Plaintiff's work at the Property violated "'specifications that would have accompanied [the permit]' – even though Mr. Swistak himself said nothing about such specifications while he personally observed the work progressing." *Id.* at ¶ 22.

Sometime in October 2023, representatives of the County re-dug the ditch on the Property, destroyed Plaintiff's landscaping work, and took the storm-drainage piping Plaintiff had installed. *See id.* at ¶ 23. The County never returned the piping, nor did the County provide compensation to Plaintiff for the cost of the landscaping work or the piping Plaintiff installed. *See id.*

Plaintiff served a Notice of Claim on the County on November 30, 2023. *See id.* at ¶ 24; *see also* Dkt. No. 1-2. To date, the County has neglected to adjust or pay the claim set forth in the notice of claim. *See* Dkt. No. 1 at ¶ 25.

In their motion to dismiss, Defendants argue that this action should be dismissed on the following grounds: (1) Plaintiff failed to exhaust administrative remedies through an Article 78 proceeding; (2) Plaintiff's first cause of action alleging an illegal taking in violation of the Fifth and Fourteenth Amendments should be dismissed because Plaintiff lacks standing to assert such a claim; (3) Plaintiff's illegal takings claim should be dismissed because Plaintiff was not the owner of the Property or did not seek just compensation through available procedures; (4) the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims; (5) Plaintiff's state-law claims should be dismissed on the merits because the complaint's allegations establish that Plaintiff's work at the Property was done in violation of New York State Highway Law § 136; and (6) the official capacity claims against Defendants Swistak and Szewczyk are redundant of the claims brought against the County. *See* Dkt. No. 17-1.

### III. DISCUSSION

**A.    Standard of Review**

"'A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.'" *Dutrow v. N.Y.S. Gaming Commission*, No. 13-CV-996, 2014 WL 11370355, *3 (E.D.N.Y. July 29, 2014), *aff'd*, 607 Fed. Appx. 56 (2d Cir. 2015) (quoting *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citation omitted) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([*i.e.*,] subject-matter jurisdiction)"). "A case is properly dismissed for lack of subject matter jurisdiction

under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

When subject matter jurisdiction is challenged, a "[p]laintiff[ ] bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). In reviewing a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). The Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [ ] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of the 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [] complaint must be dismissed[,]" *id.* at 570.

**B.    Consideration of Extrinsic Documents**

In their reply, Defendants note that Plaintiff included as exhibits with its opposition the following documents: (1) an examination under oath pursuant to General Municipal Law § 50-h of Steven Buck; (2) Defendants' pre-motion letter to the Court; (3) Plaintiff's pre-motion letter response; (4) the Notice of Claim and Notice of Violation that were included along with the complaint; and (5) e-mails, a certificate of liability insurance, a map, a check, and a letter that were introduced as exhibits in Steven Buck's 50-h examination but not attached to the complaint. *See* Dkt. No. 21 at 4. Defendants argue consideration of the 50-h examination and exhibits introduced during that examination is inappropriate in deciding a motion to dismiss since they were not attached to, mentioned in, or integral to the complaint. *See* Dkt. No. 21 at 4-5 (citing

*Rys v. Clinton Cent. Sch. Dist.*, No. 6:19-cv-1251, 2022 WL 1541301, *4 (N.D.N.Y. May 16, 2022)).

Defendants are correct that courts generally refuse to consider 50-h examination transcripts in deciding motions to dismiss under Rule 12(b)(6) because they fall outside the four corners of the complaint. *See Rys*, 2022 WL 1541301, at *4 (citing cases). Based on this authority, and because the complaint does not rely on the 50-h examination testimony, the Court will not consider the 50-h examination testimony and related exhibits in deciding the Rule 12(b)(6) aspect of Defendants' motion to dismiss. However, to the extent that Defendants have also moved under Rule 12(b)(1), consideration of these documents is appropriate. *See Town and Country Adult Living, Inc. v. Village/Town of Mount Kisco*, No. 17-cv-8586, 2019 WL 1368560, *8-9 (S.D.N.Y. Mar. 26, 2019) (holding that the court may properly consider 50-h testimony and related exhibits when deciding the Rule 12(b)(1) aspects of the defendant's motion to dismiss).

Additionally, since the Notice of Claim and Notice of Violation were attached as exhibits to the complaint, they may be considered by the Court in deciding all aspects of Defendants' motion to dismiss. Finally, the Court agrees with Defendants that the parties' pre-motion submissions are not relevant to the pending motion and will not be considered.

**C.     Failure to Exhaust**

Defendants first contend that Plaintiff's claims must be dismissed because it "never availed itself of an Article 78 proceeding to challenge the "Notice of Violation that the County issued[.]" Dkt. No. 17-1 at 8. In support of its argument, Defendants rely primarily on cases from New York State courts, and two federal court cases. *See id.*; *see also* Dkt. No. 21 at 6-8.

Contrary to Defendants' contention, Plaintiff was not required to exhaust administrative remedies prior to filing suit in federal court. In its motion, Defendants rely on *Watergate II Apts.*

*v. Buffalo Sewer Auth.*, 46 N.Y.2d 52 (1978), which Defendants note held that "[i]t is hornbook law that one who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law." *Id.* at 57 (citation omitted). What Defendants fail to mention, however, is that the Court of Appeals continues by stating that this exhaustion rule is not absolute, and that "[i]t need not be followed, for example, when an agency's action is challenged as either unconstitutional or wholly beyond its grant of power ..., or when resort to administrative remedy would be futile." *Id.* (citations omitted).

Here, Plaintiff has alleged, among other things, that Defendants' conduct resulted in a violation of the Takings Clause of the Fifth Amendment. As such, under the very caselaw upon which Defendants' rely, this claim is not subject to an exhaustion requirement. *See Doe v. Zucker*, 520 F. Supp. 3d 217, 247 (N.D.N.Y. 2021) (holding that "exhaustion of state administrative remedies is not a prerequisite to bringing a federal claim under 42 U.S.C. § 1983") (citing *Patsy v. Bd. of Regents of Florida*, 457 U.S. 496, 516 (1982)). Moreover, exhaustion of Plaintiff's claims became futile in October 2023, when the County's representatives re-dug the ditch on the Property, destroyed Plaintiff's landscaping work, and took the storm-drainage piping Plaintiff had installed. *See* Dkt. No. 1 at ¶ 23.

Defendants are correct that Plaintiff could have commenced an Article 78 proceeding to challenge Defendants' decisions, including the issuance of the Notice of Violation. Defendants are incorrect, however, in their assertion that the availability of such a proceeding precludes Plaintiff from bringing this action. In support of this position, Defendants rely on *Grune v. Hernandez*, No. 1:22-cv-857, 2024 WL 2818367 (N.D.N.Y. June 3, 2024), and *O'Shea v. City of Kingston*, No. 1:22-cv-666, 2023 WL 4105492 (N.D.N.Y. June 21, 2023). In those cases, this Court did not dismiss the plaintiffs' Takings Clause claims due to the availability of an Article 78

proceeding. Rather, this Court ruled, on the merits, that the claims failed as a matter of law. Although the Court did dismiss the plaintiffs' procedural due process claims because the availability of an Article 78 proceeding was an adequate post-deprivation remedy, the Court made no such ruling with respect to claims brought pursuant to the Takings Clause.

Accordingly, the Court denies this aspect of Defendants' motion to dismiss.

D.   **Article III Standing and Ripeness**

   *1. Standing*

Defendants argue that Plaintiff lacks Article III standing to bring its claim under the Fifth Amendment because the complaint makes clear that it was not the owner of the Property and the pipe it installed was for work performed for the benefit of the Property's owner. *See* Dkt. No. 17-1 at 11. As such, Defendants contend that Plaintiff failed to establish that it suffered an injury-in-fact as required for Article III standing. *See id.*

"Article III, Section 2 of the Constitution limits the subject-matter jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020) (citing *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019)). "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quotation and footnote omitted).

The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61).

The instant motion concerns only the injury-in-fact component of standing. *See* Dkt. No. 17-1 at 11. To establish an injury in fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "To be 'concrete,' an injury 'must actually exist,' ... that is, it must be 'real, and not abstract.'" *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) (quotation omitted).

In the present matter, Plaintiff has established that it had a property interest in the piping that was taken and, therefore, the fact that it did not own the Property is immaterial. *See Horne v. Dep't of Agric.*, 576 U.S. 350, 358-59 (2015) (holding that the Takings Clause of the Fifth Amendment "protects 'private property' without any distinction between types," so personal property is not "any less protected against physical appropriation than real property"). During Steven Buck's 50-h examination, he explained that a contract existed between Plaintiff and the owner of the Property, by which Plaintiff would not receive compensation for its work until that work was completed and the Property was sold. *See* Dkt. No. 18-2 at 77-78. At the time the piping was taken and the landscaping destroyed, Plaintiff had not completed all of its work, nor had the Property been sold; and, therefore, Plaintiff had not been (and still has not been) compensated for the piping and the related landscaping and installation work it performed. *See id.* at 79. The Court finds that these facts are sufficient to demonstrate that Plaintiff had a property interest in the piping when it was taken and that Plaintiff suffered an injury in fact sufficient to support Article III standing.

Accordingly, the Court denies this aspect of Defendants' motion.

**2. Ripeness**

Defendants next argue that the "ripeness doctrine requires dismissal as Plaintiff never sought just compensation through any of New York's available procedures." Dkt. No. 17-1 at 11. Specifically, Defendants contend that "Plaintiff's takings claim is not ripe because it never sought just compensation for its taken property via either of the two provisions available to it, namely, the procedures detailed in the New York State Eminent Domain Procedure Law, or by commencing a state law action under Article I, Section 7 of the New York State Constitution." *Id.* at 12.

"'Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts.'" *Mendez v. Banks*, 65 F.4th 56, 60 (2d Cir. 2023) (quoting *Nutritional Health All. v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998)). "For a cause of action to be ripe, and therefore justiciable, 'it must present a real, substantial controversy, not a mere hypothetical question. ... A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013)). "'The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Id.*

In support of their motion, Defendants rely on *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), in which the Supreme Court developed a two-prong ripeness test specific to takings claims. Under this test, the Supreme Court held that a taking claim is not ripe for federal review until "(1) the state regulatory entity has rendered a 'final decision' on the matter, and (2) the plaintiff has sought just compensation by means of an available state procedure." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Williamson Cty.*, 473 U.S. at 186, 194-95). Under the second prong of the *Williamson Cty.* test, courts throughout New York and the Second Circuit routinely held

11

that takings claims were not ripe until the plaintiff had sought compensation through an Article 78 proceeding. *See, e.g.*, *Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002) (dismissing the plaintiff's takings claim on ripeness grounds due to the plaintiff's failure to first seek compensation through an Article 78 proceeding); *Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 514 (2d Cir. 2014) ("'It is well-settled that New York State has a reasonable, certain and adequate provision for obtaining compensation'") (quotation omitted).

In *Knick v. Township of Scott*, 588 U.S. 180 (2019), the Supreme Court revisited *Williamson Cty.* and overruled the state exhaustion requirement, deeming it "an unjustifiable burden on takings plaintiffs[.]" *Id.* at 205. It is now the case that "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Id.* at 185. While this does not require that the government furnish such just compensation as required by the Fifth Amendment in advance of a taking, it does allow an aggrieved property owner to directly "bring his claim in federal court under [Section] 1983." *Id.* In other words, "a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Id.* at 189. Thus, the constitutional right "to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Id.*

Here, Plaintiff's allegation that representatives of the County removed and retained the piping at the Property, which Plaintiff still has a property interest in, and destroyed Plaintiff's landscaping work, is sufficient to establish finality as required for the claim to be ripe for review. Plaintiff's claim is unlike the justiciability of a regulatory takings claim, which concerns a landowner's ability to develop property within the bounds of a new zoning ordinance. *See Williamson*, 473 U.S. at 178-79. Rather, this is a physical taking, which "occurs when there is

either a condemnation or a physical appropriation of property." *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014) (citing *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002)). "[A]n alleged physical taking is by definition a final decision for the purpose of satisfying *Williamson*'s first requirement." *Juliano v. Montgomery-Otsego-Schoharie Solid Waste Mgmt. Auth.*, 983 F. Supp. 319, 323 (N.D.N.Y. 1997); *see also Graham-Johnson v. City of Albany*, 471 F. Supp. 3d 506, 517 (N.D.N.Y. 2020) (holding that the plaintiff's allegation that his home was demolished was sufficient to establish the finality of the decision).

Accordingly, the Court denies this aspect of Defendants' motion.

**E.    State-Law Claims**

Defendants contend that Plaintiff's claims for conversion, negligence, and for a violation of Highway Law § 136 must be dismissed "because the alleges facts establish that Plaintiff violated the plain terms of Highway Law § 136[.]" Dkt. No. 17-1 at 15-16. In response, Plaintiff contends that the facts alleged in the complaint demonstrate that it complied with Highway Law § 136 and, in fact, that Defendants acted in violation of Highway Law § 136. *See* Dkt. No. 18 at 17-18.

Section 136 of the Highway Law provides in relevant part as follows:

> [N]o person, firm, corporation or municipality shall construct or improve, within the county road right of way an entrance or connection to such road, or construct within the county road right of way any works, structure or obstruction, or any overhead or underground crossing thereof, or lay or maintain therein underground wires or conduits or drainage, sewer or water pipes, except in accordance with the terms and conditions of a work permit issued by the county superintendent or his duly designated agent, notwithstanding any consent or franchise granted by any town superintendent, or by any other municipal authority.

* * *

13

> Any person, firm or corporation violating this section shall be liable to a fine of not less than twenty-five dollars nor more than one thousand dollars for each day of violation, to be recovered by the county superintendent and paid in to the county treasury to the credit of the county road fund created under this article for the construction, reconstruction and maintenance of county roads on the county road system in accordance with the provisions of this article, <u>and may also be removed therefrom as a trespasser by the county superintendent upon petition to the county court of the county or to the supreme court of the state</u>.

N.Y. Highway Law § 136(1), (6) (emphasis added).

According to Defendants, the complaint "establishes that Plaintiff violated the statute as it acknowledged that it did not yet have a building permit on hand prior to commencement of the work, claiming instead that Szewczyk informed it via e-mail that the permit was 'ready.'" Dkt. No. 17-1 at 16 (citing Dkt. No. 1 at ¶¶ 13, 21). As Plaintiff notes, the language of Section 136 clearly provides that covered work must be performed "in accordance with the terms and conditions of a work permit issued by the county superintendent or his duly designated agent[.]" As alleged in the complaint, Defendant Szewczyk notified Plaintiff that its permit to perform work at the Property was "ready" the day before work commenced at the Property. Dkt. No. 1 at ¶ 13. Defendant Swistak, the Assistant County Engineer, was at the Property while the work was being done and "expressly told representatives of [Plaintiff] that they did *not* need to stop the work." *Id.* at ¶ 17 (emphasis in original). Moreover, while observing the work at the Property, Defendant Swistak requested certain alternations to the work be done and Plaintiff complied with each request. *See id.* at ¶ 16. Based on these facts, Plaintiff reasonably relied upon the affirmative representations of Defendants Szewczyk and Swistak, both County employees, and these inducements resulted in the piping installation and landscaping on the Property on July 27, 2023. *See id.* at ¶ 54. Accepting as true the factual allegations contained in the complaint and drawing all inferences in

Plaintiff's favor, any uncertainty as to whether the permit was granted must be resolved in Plaintiff's favor.[1]

Additionally, the complaint alleges that, even if the permit was somehow not "ready," the County violated Section 136(6) by destroying Plaintiff's work and taking the storm-drainage piping from the Property. *See* Dkt. No. 1 at ¶ 44. Specifically, before the landscaping or piping could lawfully be "removed" from the Property, the "county superintendent" was required to "petition ... the county court of the county ... or the supreme court of the state." N.Y. Highway Law § 136(6). The complaint contends that, rather than petitioning the court as required, the County impermissibly engaged in "self-help" in destroying Plaintiff's work at the Property. *See* Dkt. No. 1 at ¶ 46. Again, these allegations are sufficient to plausibly allege a violation of Section 136.

Accordingly, the Court denies this aspect of Defendants' motion to dismiss.

**F.   Defendants Swistak and Szewczyk**

Defendants contends that the official capacity claims against Defendants Swistak and Szewczyk, as County employees, are redundant of the claims brought against the County and, therefore, all claims against Defendants Swistak and Szewczyk should be dismissed. *See* Dkt. No. 17-1 at 17. As Plaintiff correctly notes, however, Defendants Swistak and Szewczyk are only named in Plaintiff's fourth and fifth claims arising under New York law for declaratory judgment and negligence. *See* Dkt. No. 18 at 18-19. Since Defendants Swistak and Szewczyk were not

---

[1] Notably, nothing in Section 136 required Plaintiff to take possession of the permit once it was "ready." Without possession of the permit, however, it would be difficult, if not impossible, for Plaintiff to ensure that its work was being done "in accordance with the terms and conditions of a work permit issued by the county superintendent." N.Y. Highway Law § 136(1). Whether Plaintiff's work at the Property was done in compliance with the terms of the permit, however, is not an issue presently before the Court.

named in Plaintiff's Section 1983 cause of action, and because Defendants have seemingly abandoned this argument in their reply, the Court denies this aspect of Defendants' motion.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 17) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 7, 2024
Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge